IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

VICTOR LARKIN HILL,                  §
                                     §
            Applicant,               §
                                     §
v.                                   §      No. 4:20-CV-374-A
                                     §
BOBBY LUMPKIN, Director,             §
Texas Department of Criminal         §
Justice, Correctional                §
Institutions Division,               §
                                     §
            Respondent.              §

### MEMORANDUM OPINION
### and
### ORDER

Before the court is a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 filed by applicant, Victor Larkin
Hill, a state prisoner, against Bobby Lumpkin, director of the
Texas Department of Criminal Justice, Correctional Institutions
Division (TDCJ), respondent. After having considered the
pleadings and relief sought by applicant, the court has concluded
that the petition should be denied.

### I.   Factual and Procedural History

On September 16, 2015, applicant was indicted in Tarrant
County, Texas, Case No. 1420018D, with one count of possession of
a controlled substance, cocaine, of four grams or more but less
than 200 grams and one count of possession of a controlled
substance, heroin, of one gram or more but less than four grams.
(Clerk's R. 5, doc. 18-11.) The indictment also included a

habitual offender notice. (Id.) Nineteen days before his trial
was commence, the state gave applicant's trial counsel notice
that it intended to seek a deadly weapon finding. (Id. at 29.)
Subsequently, on July 26, 2016, while a jury panel waited outside
the courtroom, applicant opted to have waive his right to a jury
trial and entered open pleas of guilty to the charges, a plea of
true to the habitual-offender notice, and a plea of not true to
the deadly-weapon notice. (Id. at 66-72; Reporter's R., vol. 2,
21-22, doc. 18-13.) Following a hearing, the trial court accepted
applicant's guilty pleas, found the habitual-offender notice
true, entered an affirmative deadly-weapon finding, and assessed
applicant's punishment at 28 years' confinement on each count.
(Clerk's R. 74, 76, doc. 18-11.) Applicant appealed, but the
appellate court affirmed the trial court's judgment and the Texas
Court of Criminal Appeals denied his petition for discretionary
review. (Electronic R., doc. 18-9.) Applicant also sought post-
conviction state habeas relief, to no avail. (Action Taken doc.
18-18.) This federal habeas-corpus petition followed.

The appellate court summarized the background facts of the
case as follows:

> On June 17, 2015, City of Fort Worth Police
> Officer Clay Collins directed a confidential informant
> (CI) to perform a "controlled buy" of narcotics at
> Apartment 133 (the Apartment) on 5950 Boca Raton
> Boulevard in Fort Worth. While Officer Collins and
> other police officers watched with binoculars, the CI
> went to the Apartment's outer door and announced his
> presence, and [applicant] came to the door. The drug

2

transaction took place, and the CI returned to the watching officers with heroin and cocaine. On June 29 or June 30, 2015, Officer Collins observed another controlled buy at the Apartment doorway with a different seller. Officer Collins did not see a weapon in either transaction.

On June 30, 2015, based on the two transactions, the police obtained a search warrant for the Apartment. At trial, Officer William Snow testified,

- He and several other officers served the narcotics search warrant at the Apartment;

- He was the point man;

- After he breached the front door, he saw [petitioner] sitting alone in the middle of the couch in the living room;

- Officer Snow did not see anyone but [applicant] in the Apartment;

- Officer Snow saw a Desert Eagle pistol on the end table to [applicant]'s left;

- The pistol was "in close proximity" to and "[w]ithin arm's reach" of [applicant];

- Officer Snow did not remember whether the pistol was loaded but "just noticed it and left it there for narcotics to handle";

- State's Exhibits 35 and 36 were an "eight-round magazine" and "ammunition for it";

- Guns "usually go[] hand in hand with the narcotics"; and

- Officer Snow handcuffed and searched [applicant], finding about $800 in cash and a plastic bag of empty capsules in his pockets.

Officer Collins searched the kitchen and living room. He found:

- In the kitchen, heroin inside a can that

3

looked like a fake battery and what appeared
to be capsules of black tar heroin and
powdered cocaine in a pill bottle;

- In a cabinet in the living room, capsules in
  a fluted glass along with a plastic container
  of coins;

- On the coffee table in the living room,
  currency and more capsules on one end and a
  wallet containing currency on the other end;

- On an entertainment center in the living
  room, two plates containing what appeared to
  be crack cocaine;

- Under the couch in the living room, a baggie
  containing capsules of what appeared to be
  heroin; and

- Under a smaller couch in the living room, a
  dominoes' container containing cash.

Officer Collins testified that the capsules found on
[applicant] appeared to be the same as those found in
the Apartment and that the total amount of cash found
in the Apartment, including that found on [applicant],
was $1,164.

[Applicant]'s wife testified that she did not live
in the Apartment and that [applicant] did not live
there on June 17, 2015 or on June 30, 2015. She did not
know who lived there.

(Mem. Op. 2-4, doc. 18-1.)

## II.  Issues

Applicant raises the following four grounds, verbatim, for

habeas relief (all spelling, punctuation, and/or grammatical

errors are in the original):

   (1)  The Courts made an unreasonable determination of
        facts, contrary to the facts in the record
        regarding a deadly weapon finding not supported in
        the indictment, and by entering it into the

4

judgement of conviction;

(2)    Denial of effective assistance of counsel during
       the plea bargain at the plea and sentencing
       hearing;

(3)    Denial of effective assistance of counsel by
       failing to inform [petitioner] of the State's
       notice of intent to seek a deadly weapon finding
       prior to trial;

(4)    Denial of effective assistance of counsel by not
       objecting to the State's implied finding of a
       deadly weapon not included in the indictment.

(Pet. 6-7, doc. 1.)

### III.  Rule 5 Statement

Respondent believes that the petition is neither barred by
limitations nor subject to the successive-petition bar and that
applicant has exhausted his state-court remedies. (Resp't's
Answer 4, doc. 16.)

### IV. Standard of Review

A § 2254 habeas petition is governed by the heightened
standard of review provided for by the Anti-Terrorism and
Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the
Act, a writ of habeas corpus should be granted only if a state
court arrives at a decision that is contrary to or an
unreasonable application of clearly established federal law as
determined by the United States Supreme Court or that is based on
an unreasonable determination of the facts in light of the record
before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v.
Richter*, 562 U.S. 86, 100-01 (2011).

5

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. An applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000).

Further, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018). Under those circumstances, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.*

## V. Discussion

Under his first ground, applicant claims that, in violation of his right to due process, he was not given adequate notice that the state intended to seek a deadly weapon finding and that

the trial court abused its discretion by entering the affirmative deadly weapon finding. Under his second and third grounds, applicant claims that he was denied effective assistance of trial counsel because counsel did not properly advise and/or misinformed him about plea offers and allowed plea offers to expire and because counsel failed to inform him about the state's notice of intent to seek a deadly weapon finding prior to trial. (Id. at 6-7.) Under his fourth ground, applicant claims that counsel's failure to inform him of the state's intent to seek a deadly weapon finding rendered his pleas unintelligent and involuntary and that counsel was ineffective by failing to object and preserve the error in his defense. (Id. at 7.)

To establish ineffective assistance of counsel in the context of a guilty plea, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland v. Washington, Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

7

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where the state court has adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101.

Further, "[a] guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya v. Johnson,* 226 F.3d 399, 404 (5th Cir.2000). A guilty plea is knowing, voluntary, and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Brady v. United States,* 397 U.S. 742, 749–50 (1970). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review." *Deville v. Whitley,* 21 F.3d 654, 657 (5th Cir.1994) (quotation and quoted case omitted).

8

Petitioner raised his claims in his state habeas application, which was referred to a magistrate judge for hearing, factual findings, and conclusions of law. (SHR03[1] 112, doc. 18-22.) Toward that end, the magistrate ordered an affidavit from trial counsel, Abe Factor, an experienced board-certified attorney in criminal law, who responded to applicant's allegations in an affidavit as follows (all spelling, punctuation, and/or grammatical errors are in the original):

> I was retained on December 30, 2015, to represent ("Hill" or "Applicant") on two felony narcotics possession charges pending in the 396th criminal district court of Tarrant County before presiding judge George Gallagher. On July 7, 2016, the state filed a *Brooks* notice that it intended to seek a deadly weapon finding in Hill's trial. . . .
>
> I will respond to Hill's allegations below. In his Application for Writ of Habeas Corpus, Hill has alleged generally in multiple grounds that I:
> a. failed to object to the trial court's finding of a deadly weapon,
> b rendered ineffective assistance of counsel during the open plea and sentencing proceedings, and
> c. rendered ineffective assistance of counsel by failing to inform Applicant that the State was seeking a deadly weapon finding.
>
> At all times, the proper standard must be kept in mind. To prevail on an ineffective assistance claim, Applicant must prove by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. He must therefore show a reasonable probability that, but for the purported errors, the result of the proceeding would have been different.

---

[1] "SHR03" refers to petitioner's relevant state habeas proceeding in WR-89,233-03.

**In reference to Hill's claims that: (a) I failed to object to the trial court's finding of a deadly weapon, and (b) I failed to inform him of the State's intent to seek a deadly weapon finding, I respond as follows:**

Hill was indicted on the instant underlying cases on September 16, 2015. I substituted in as Hill's attorney on December 30, 3015. The indictment did not included a deadly weapon allegation. Whenever I transmitted the State's plea offers to Hill, I pointed out that there was still no deadly weapon allegation in the pending charges. However, once the State filed its *Brooks* notice, I informed him soon thereafter of the effect on his case and every ramification of the deadly weapon allegation raised by the State's *Brooks* notice. Thus, there is absolutely no possible way that Hill was surprised by the deadly weapon allegation at the plea hearing as he claims. Hill's claim is therefore groundless.

Further, Hill's claim that I was ineffective for failing to "object" to the trial court's finding of "true" on the deadly weapon allegation is disingenuous at the least. Hill was well-aware that the State had signified its intent to seek a deadly weapon finding at trial. Notwithstanding these facts, Hill persisted in his guilty plea and judicial confession. In that judicial confession, Hill admits that "[a]ll deadly weapon allegations are true and correct." Moreover, there were no non-frivolous grounds to "object" to the trial court's finding. The Brooks notice had been on file for approximately 19 days at that point, a time period which Texas law holds to be more than sufficient notice in similar circumstances.

Therefore, any "objection" to the trial court's deadly weapon finding would have [been] futile, and it is axiomatic that defense counsel is not required to make futile objections under Texas law. Further, Applicant must show that the trial court would have reversibly erred in overruling an objection to its deadly weapon finding. Hill cannot show that an objection to the trial court's deadly weapon finding would have likely changed the result of the proceeding.

**In reference to Hill's claim that I rendered**

10

**ineffective assistance of counsel during the open plea and sentencing proceedings, I respond as follows:**

During the course of my representation of Hill, I engaged in nearly continuous plea negotiations with the State. At one point in time, the State offered a plea bargain of five years incarceration in return for a plea of guilty, an offer that was notable in that it would not include a deadly weapon finding. I immediately informed Hill of the State's offer, and counseled that I believed that under the fact and circumstances of the case and the applicable law, the State's offer was not unreasonable. I also informed Hill that the case would soon reach the point in time where the State's offer would expire and the State would instead begin preparing for trial. Notwithstanding these facts, he didn't want to go into custody and wanted to remain out of jail. At all times, it was entirely Hill's decision whether to accept or reject a plea bargain offer. Understandably, Hill now likely wishes he had accepted the State's five-year offer. However, when he had the opportunity to do so, he refused on his own accord.

As the case proceeded closer to the trial date, the State's plea bargain offers became less desirable from the standpoint of the defense. Further, once the State filed its *Brooks* Notice on July 7, 2016, the State's then-pending offer of 25 years in return for a plea of guilty also required a plea of "true" to the deadly weapon allegation.

The case eventually progressed to the trial date of July 26, 2016. On the record, I asked Hill whether he wanted to go to trial, accept the State's offer of 25 years, or go open to the judge. At that time, there was a jury panel in the hallway in preparation for jury selection in Hill's trial which was scheduled to begin that day. Also on the record, Hill made the decision to enter an open plea to the judge. At all times, it was Hill's decision on which option to take; open plea, State's offer, or jury trial.

While Hill may now have a sort of "buyer's remorse" for failing to accept the State's reasonable plea offers at the times they were available, such is not the standard by which effective assistance of counsel if measured.

11

(Id. at 129-33 (footnotes and citations omitted).)

Based on counsel's affidavit and the documentary record, and applying relevant state and federal law, the magistrate adopted the following relevant findings of fact and legal conclusions:

### FINDINGS OF FACT

. . .

*Deadly Weapon Notice*

13. Applicant alleges that his due process rights were violated because the State did not provide him notice of its intent to seek a deadly weapon finding and the trial court should not have accepted his plea due to the lack of notice.

14. Applicant alleges that the evidence is insufficient to support the deadly weapon finding.

15. Applicant alleges that his trial counsel was ineffective for failing to object to the deadly weapon notice and finding.

16. Applicant alleges that his trial counsel was ineffective for failing to inform him of the State's deadly weapon notice.

17. The State provided Applicant, through service to his attorney, notice of its intent to seek a deadly weapon finding in Applicant's case on July 7, 2016.

18. Factor informed Applicant that the State had filed a deadly weapon notice in his case after the State filed its notice.

19. Factor informed Applicant of the effect of the State's deadly weapon allegation had on his case, including every ramification the deadly weapon allegation may have.

20. At Applicant's plea hearing, the trial court discussed the deadly weapon notice and allegation with Applicant.

21.  When asked about the deadly weapon notice,
     Applicant stated "it wasn't none of mine."

22.  Applicant did not assert that he had not been
     informed of the deadly weapon allegation when the
     trial court asked him about it.

23.  Applicant affirmed that he understood the deadly
     weapon notice.

24.  Applicant was aware of the deadly weapon
     allegation prior to pleading guilty to the charged
     offense and not true to the deadly weapon
     allegation.

25.  Factor did not object to the State's deadly weapon
     notice because the notice was timely filed 19 days
     prior to Applicant's plea hearing and bench trial.

26.  After Applicant pleaded guilty to the charged
     offenses and not true to the deadly weapon
     allegation, the trial court conducted a bench
     trial on punishment, were the focus was on the
     deadly weapon issue.

27.  At Applicant's bench trial on punishment, the
     State presented evidence to support the deadly
     weapon allegation.

28.  At the conclusion of the bench trial on
     punishment, the trial court made an explicit
     finding on the record that "a deadly weapon was
     used or exhibited during the commission of this
     offense."

29.  Factor did not object to the trial court's
     affirmative deadly weapon finding because he
     concluded that there were no non-frivolous grounds
     on which to object to the finding.

30.  Applicant's sole point of error on appeal was that
     the evidence was legally insufficient to support
     the trial court's affirmative deadly weapon
     finding.

31.  The Second Court of Appeals found that the
     evidence at Applicant's bench trial on punishment
     was legally sufficient to support the trial

13

court's affirmative deadly weapon finding.

*Ineffective Assistance of Trial Counsel Regarding Plea Negotiations*

32. Applicant alleges his trial counsel was ineffective by incorrectly conveying the State's plea offers to him and failing to explain the effect of the deadly weapon notice on the plea bargain offers.

33. During the course of representing Applicant, Factor engaged in continuous plea negotiations with the State.

34. At one point, the State offered a plea bargain of five years' incarceration with no deadly weapon finding in exchange for a plea of guilty.

35. Factor informed Applicant of the State's plea bargain offers.

36. Factor informed Applicant that the five-year plea bargain was not unreasonable given the facts and circumstances of Applicant's case.

37. Factor informed Applicant that his case would reach a point that the plea bargain offers would expire and the State would insist on going to the trial.

38. Factor informed Applicant of the effect the deadly weapon notice had on his case.

39. Applicant informed Factor that he did not want to accept the State's offers because he was out on bond and did not want to return to custody.

40. Applicant rejected the State's early plea bargain offers.

41. After the State filed its deadly weapon notice, the State's plea-bargain offer was 25 years' incarceration and required a plea of "true" to the deadly weapon allegation.

42. Factor explained to Applicant that he could go to trial, accept the State's offer of 25 years'

14

incarceration, or proceed with an open plea to the trial court.

43. Knowing his options, Applicant made the decision to enter an open plea to the trial court, pleading guilty to the charged offenses and not true to the deadly weapon allegation.

44. Factor's affidavit is credible and supported by the record.

. . .

## CONCLUSIONS OF LAW

*General Writ and Ineffective Assistance of Counsel Law*

1. "We have repeatedly held that the burden of proof in a habeas application is on the applicant to prove his factual allegations by a preponderance of the evidence."

2. Relief may be denied if the applicant states only conclusions, and not specific facts. "Sworn pleadings provide an inadequate basis upon which to grant relief in habeas actions."

3. The two-prong test enunciated in *Strickland v. Washington* applies to ineffective assistance of counsel claims in non-capital cases. To prevail on his claim of ineffective assistance of counsel, the applicant must show counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability the results of the proceedings would have been different in the absence of counsel's unprofessional errors.

4. "The proper standard of review for claims of ineffective assistance of counsel is whether, considering the totality of the representation, counsel's performance was ineffective."

5. "[The] court will not second guess through hindsight the strategy of counsel at trial nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness."

15

*Deadly Weapon Notice*

6.  Accused persons are entitled to notice in some
    form that the use of a deadly weapon will be a
    fact issue at the time of prosecution.

7.  An enhancement notice is presumptively reasonable
    if it is given at least 10 days before trial.

8.  The State provided Applicant with sufficient
    notice that the use of a deadly weapon would be a
    fact issue through its deadly weapon notice filed
    19 days before Applicant's plea hearing.

9.  Applicant presents no credible evidence that
    Factor failed to inform him of the deadly weapon
    notice.

10. Factor properly advised Applicant regarding the
    effect of the deadly weapon finding.

11. Applicant has failed to show that he was not
    informed of the deadly weapon notice until the day
    of his plea proceedings.

12. The trial court properly admonished Applicant
    about the deadly weapon finding.

13. Applicant presents no credible evidence that the
    trial court accepted his plea before Applicant
    received notice of the deadly weapon finding.

14. Factor's decision not to object to the deadly
    weapon notice was the result of reasonable trial
    strategy.

15. Factor's decision not to object to the trial
    court's deadly weapon finding was the result of
    reasonable trial strategy.

            .  .  .

*Ineffective Assistance of Trial Counsel Regarding Plea
Negotiations*

23. In the ordinary case, criminal defense attorneys
    have a duty to inform their clients of plea
    agreements proffered by the prosecution. Failure

16

to inform clients of plea agreement offers generally constitutes ineffective assistance of counsel under the Sixth and Fourteenth Amendments.

24. The record demonstrates that Factor properly informed Applicant of the State's plea-bargain offers prior to trial.

25. Applicant has failed to show that Factor failed to inform him of the State's plea-bargain offers prior to trial.

26. Factor effectively fulfilled his duty to Applicant by informing him of the State's plea-bargain offers prior to trial.

27. Applicant knowingly and voluntarily rejected the State's plea-bargain offers prior to his trial.

(Id. at 150-59 (citations omitted).)

The state habeas judge, who also presided at the plea proceedings, adopted the actions of the magistrate. (Id. at 194). In turn, the Texas Court of Criminal Appeals denied relief without written order on the findings of the trial court and on its own independent review of the record. (Action Taken, doc. 18-18.) Applicant has failed to present clear and convincing evidence to rebut the state courts' factual findings; thus, this court must defer to those findings, including the courts' credibility determinations, when considering his claims. 28 U.S.C. § 2254(e)(1); *Carter v. Collins,* 918 F.2d 1198, 1202 (5th Cir. 1990). Having done so, the state courts' adjudication of the claims is neither in conflict with established federal law nor objectively unreasonable based on the evidence before the state courts.

17

As to applicant's first ground, his assertion that he did not receive adequate notice that the state would seek a deadly weapon finding and that the trial court thus abused its discretion by entering an affirmative finding is refuted by the record, most notably by counsel's affidavit. Nonetheless, the issue involves a matter of state law.[2] The state courts found that applicant had been informed of the state's intent to seek a deadly weapon finding and that the evidence adduced at the punishment hearing was sufficient to support such a finding. (SHR03 151-53, doc.18-22.) A federal court will not review a state court's interpretation of its own law. *See Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir. 1995).

Similarly, as to applicant's grounds two and three, his assertions that counsel did not inform him that the state intended to seek a deadly weapon finding and did not properly advise him regarding of the state's plea offers are refuted by counsel's affidavit. "[A] state court may evaluate an ineffective assistance of counsel claim by making credibility determinations based on affidavits submitted by the petitioner and the attorney." *Carter,* 918 F.2d at 1202. The state courts clearly found counsel's affidavit credible and applicant's unsworn

---

[2] Petitioner did not raise a due process claim under the Fifth Amendment of the United States Constitution in state court and the state court's ruling on the claim made no indication that it saw the claim as a federal constitutional one. To the extent applicant attempts to raise such a claim for the first time in this federal petition, it is unexhausted and procedurally barred.

18

statement regarding the facts and circumstances incredible.
(SHR03 79, doc. 18-21.)

As to applicant's fourth ground, his assertion that his
pleas were rendered unintelligent and involuntary as a result of
counsel's failure to inform him that the state intended to seek a
deadly weapon finding is also refuted by the record. Counsel
informed applicant of the state's intent shortly after receiving
the state's notice and the effect it would have on his case.
(SHR03 131, doc. 18-22.) Further, during the plea proceeding the
trial court discussed the matter with applicant and any confusion
on applicant's part, real or feigned, was resolved by counsel in
a break from the proceeding, after which applicant persisted in
his desire to plead guilty in open court. (Reporter's R., vol. 2,
16-22, doc. 18-13.) Such declarations in open court adequately
established the voluntary character of his pleas notwithstanding
his plea of not true to the deadly weapon allegation. *See Moore
v. Estelle,* 526 F.2d 690, 698 (5th Cir. 1976). Finally, given
that notice of the state's intent was adequate and the evidence
sufficient to support an affirmative finding as a matter of state
law, any objection by counsel would have been futile. *See Roberts
v. Thaler,* 681 F.3d 597, 611 (5th Cir. 2012) (providing "[w]e
'ha[ve] made clear that counsel is not required to make futile
motions or objections").

## VI. Conclusion

For the reasons discussed, it is ORDERED that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. It is further ORDERED that a certificate of appealability be, and is hereby, denied.

SIGNED February ____4____, 2021.


JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE